1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF KENTUCKY
2                         LOUISVILLE DIVISION

3
     UNITED STATES OF AMERICA,      )    Case No. 3:21-CR-22
4                                   )
             Plaintiff,             )
5                                   )
     v.                             )
6                                   )
     JOHN SUBLESKI                  )
7                                   )    July 26, 2021
             Defendant.             )    Louisville, Kentucky
8

9                              *  *  *  *  *
                  TRANSCRIPT OF SENTENCING HEARING
10              BEFORE HONORABLE BENJAMIN J. BEATON
                    UNITED STATES DISTRICT JUDGE
11                             *  *  *  *  *

12   APPEARANCES:

13   For United States:      Joshua D. Judd
                             U. S. Attorney's Office
14                           717 West Broadway
                             Louisville, KY 40202
15
     For Defendant:          Patrick J. Renn
16                           600 W Main St
                             Suite 100
17                           Louisville, KY  40202

18   [Defendant present.]

19

20                      Rebecca S. Boyd, RMR, CRR
                          Official Court Reporter
21                        232 U.S. Courthouse
                          Louisville, KY 40202
22                           (502) 625-3777

23   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
24

25

1          (Begin proceedings in open court at 1:06 p.m.)

2               THE COURT:  All right.  Let's go on record in the case

3     of the United States of America against John Subleski, Criminal

4     Case 3:21-22.  Could counsel please state your appearances for

5     the record?

6               MR. JUDD:  Good afternoon.  Josh Judd.  I represent

7     the United States.

8               MR. RENN:  Good afternoon, Your Honor.  Patrick Renn

9     with John Subleski, and he is seated here at counsel table.

10              THE COURT:  Afternoon, Mr. Subleski.  Mr. Renn's

11    representing you here today, correct?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Okay.  Are we all ready to proceed?

14              MR. JUDD:  Yes, sir.

15              MR. RENN:  We are, Your Honor.

16              THE COURT:  Okay.  Now, we were here back in April to

17    enter Mr. Subleski's conditional guilty plea, and I told you-all

18    then that we would need to talk through it again once we had the

19    presentence report and had a chance to see how the proposed

20    resolution lined up with what the probation office and any

21    further research turned up.

22         So, Mr. Subleski, today we're going to review the

23    presentence report.  I don't believe there are any objections at

24    this time that we need to resolve.  We, I believe, all agreed

25    that we simply do not have an applicable sentencing guidelines

1    range to start with like we would in a normal case here.

2        We're going to give the lawyers a chance to make any motions

3    and arguments.  Then I'll listen to anything that you have to

4    say today regarding the sentencing.  As I mentioned to you back

5    in April, that's purely optional.  It's your choice whether to

6    address the Court.

7        We'll talk about the sentencing factors that Congress

8    instructs courts to consider in a case like this, and then the

9    Court will announce whether the C Plea will be accepted, and

10   then we'll talk about appeal rights.

11       So, Mr. Subleski, based on where things stand today and your

12   conversations with Mr. Renn, do you have a general understanding

13   of how -- how we're going to proceed today?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Okay.  Good.  Okay.  Just like I told you

16   last time, if, at any point, you don't understand what's going

17   on, you need to -- you need us to rephrase something or pause,

18   talk to your lawyer, just get my attention or Mr. Renn's.  We

19   want to make sure you understand everything that's happening

20   here today.  Okay?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And if you don't get our attention, we're

23   going to assume that you do understand.

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  That fair?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Good.  All right.  I have received

3    the PSR, sentencing memos from both sides.  Is there anything

4    else that the Court ought to have in front of it or that I

5    should have already read to be prepared to handle this hearing

6    today?

7          MR. RENN:  Nothing from the defense, Your Honor.

8          MR. JUDD:  No, sir.  Not from the Government.

9          THE COURT:  Okay.  Mr. Renn, have you and Mr. Subleski

10   read and discussed the presentence report prepared by probation?

11         MR. RENN:  We have, Your Honor.

12         THE COURT:  And any objections beyond the ones that I

13   believe probation already responded to in the -- in its

14   addendum?

15         MR. RENN:  No, Your Honor.  We did raise two, and,

16   basically, it was issues that the probation office was able to

17   respond to and made one of the changes, so we have no

18   objections.

19       Obviously, in this case here, we had the initial disclosure,

20   and then there was the revised presentence report, and then here

21   most recently, there were some additional conditions that were

22   set forth that had not been previously disclosed.  I have

23   received those.

24       This was filed on July the 20th, and I had an opportunity to

25   speak with Mr. Subleski over the telephone, and then before we

1    came on the record here today, I did go down and meet with him

2    in the Marshal's office, and we, again, went over the proposed

3    special conditions of supervised release that mainly relate to

4    his computer use, and he is, you know, agreeable with the terms

5    that are set forth in the presentence report.

6            THE COURT:  Okay.  Thank you.  My recollection is the

7    plea agreement did not address those terms, correct?

8            MR. JUDD:  That's correct.

9            MR. RENN:  They did not, Your Honor.

10           THE COURT:  Does the Government have anything to add

11   in response to the amended report that, I believe, notified both

12   sides we might -- that the Court would consider imposing some

13   computer-related restrictions as well?

14           MR. JUDD:  The United States believes those are

15   warranted conditions and supports the application of those

16   conditions.

17           THE COURT:  Okay.  Mr. Subleski, have you had enough

18   time to read this report and discuss it with your lawyer?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Okay.  Any remaining questions before we

21   proceed that you'd like to discuss with him today?

22           THE DEFENDANT:  No, Your Honor.

23           THE COURT:  Okay.  All right.  Based on my review of

24   the presentence report and the parties' responses, I don't

25   believe there are any objections we need to address, and, Mr.

1    Renn, I believe you just confirmed you share that view?

2              MR. RENN:  I do, Your Honor.  Thank you.

3              THE COURT:  Okay.  The Court will adopt and rely on

4    the PSR.  We'll place it in the record and file it under seal.

5        Okay.  The advisory guidelines range, I know you-all took a

6    look at this along with probation.  We did a little bit too,

7    and, as far as I can tell, no one has been able to come up with

8    any guideline offense that would be analogous and provide a

9    good -- an appropriate starting point for this offense.

10       In other words, not only is there no guidelines guidance for

11   this particular offense, but we've not been able to analogize it

12   to another offense that might give us a starting -- starting

13   point under the guidelines.  Is that the Government's view?

14             MR. JUDD:  Yes, it is.

15             THE COURT:  You agree, Mr. Renn?

16             MR. RENN:  I do, Your Honor.

17             THE COURT:  Okay.  The charge, as I mentioned, is one

18   for which no guideline has been expressly promulgated, and

19   section 2X5.1 addresses this situation asking us to look at the

20   most analogous offense guideline, but that's what we have been

21   unable to identify despite all our best efforts.

22       So as we discussed at the change of plea hearing we have the

23   proposed agreement, which discusses the sentence of time served,

24   which would, obviously, be under the statutory maximum for this

25   offense of five years.  The maximum term of supervised release,

```
 1    I believe, is three years, and, if I'm not mistaken, the plea

 2    agreement did not address supervised release, did it, Mr. Judd?

 3              MR. JUDD:  It reserved it for sentencing, Your Honor.

 4              THE COURT:  Okay.  Is --

 5              MR. RENN:  That is correct.

 6              THE COURT:  -- that right?

 7              MR. RENN:  That is correct.

 8              THE COURT:  Okay.  Restitution, is that at issue at

 9    all here today, Mr. Judd?

10              MR. JUDD:  No, sir.

11              THE COURT:  Is there a victim?

12              MR. JUDD:  He's present here today.  Yes, sir.

13              THE COURT:  Okay.  And has the United States conferred

14    regarding potential rights to -- restitution rights to be heard

15    in this case?

16              MR. JUDD:  Yes.  We have consulted with the victim,

17    Your Honor, prior to the plea agreement being presented to the

18    defense.

19              THE COURT:  Okay.  And will the -- will he be seeking

20    to weigh in or participate in any way?

21              MR. JUDD:  May I have a moment, Your Honor, please?

22              THE COURT:  Yes.

23              MR. JUDD:  He would like to address the Court.

24              THE COURT:  Okay.  Is this the most appropriate time

25    or would you prefer we address it later?
```

1          MR. JUDD:  Whenever the Court sees fit.  We can do it

2     later, if you like, Your Honor.  He's prepared to speak when --

3     when the Court wants to hear from him.

4          THE COURT:  Okay.  Well, I appreciate that.  In just a

5     few moments, we'll hear statements from lawyers and potentially

6     from the defendant, and, at that point --

7          MR. JUDD:  Yes.

8          THE COURT:  -- we'll hear from the victim as well.

9     Okay?

10          MR. JUDD:  Yes.

11          THE COURT:  Forfeiture, I believe, has been addressed

12     separately by motion, and it addressed guns, ammunition,

13     tactical equipment; is that right?

14          MR. JUDD:  Yes, sir.

15          THE COURT:  Okay.

16          MR. RENN:  Yes, Your Honor.

17          THE COURT:  Any objection on that?

18          MR. RENN:  No, Your Honor.

19          THE COURT:  Okay.  What's the Government's position on

20     a potential fine in this case?

21          MR. JUDD:  He is represented by court-appointed

22     counsel, I believe.

23          MR. RENN:  That is correct.

24          MR. JUDD:  In that instance, he's indigent.  We would

25     not recommend a fine.  He's unemployed at this time, so --

1          THE COURT:  Do you agree?

2          MR. RENN:  I do.  Your Honor, if you look in the

3   presentence report I know the Court has, I think he's got some

4   $4,000 in debt, and he had -- you know, has about $1,200 in a

5   bank account.  Although he was gainfully employed and had a good

6   salary, I don't think a fine would be appropriate in this

7   circumstance.

8          THE COURT:  Okay.  Could we go on the sealed record

9   for a moment, and I'll ask counsel to come up to the bench,

10  please.

11     (Bench conference filed under seal.)

12          THE COURT:  All right.  We'll go back on the public

13  record.  All right.  At this point, as I mentioned a moment ago,

14  we'll hear from counsel regarding the sentencing factors that

15  the Court must consider under the law, but first let's pause and

16  hear from the victim in this case.

17     You can stand up there or you can have a seat.  Whatever is

18  most comfortable.

19          UNIDENTIFIED SPEAKER:  Oh, this is fine, Your Honor.

20          THE COURT:  Okay.

21          MR. JUDD:  Just introduce yourself.

22          UNIDENTIFIED SPEAKER:  I would rather not have my full

23  name or my name presented with his status.

24          THE COURT:  Do you see any reason we need that?

25          MR. JUDD:  That's fine.  We can use initials, if he

1   likes.

2          THE COURT:  Mr. Renn, do you see any reason to put a

3   name on the record?

4          MR. RENN:  No, Your Honor.

5          THE COURT:  Okay.  And I should have mentioned this

6   earlier.  I know Mr. Subleski asked for headphones a moment ago.

7   If there's anything we talked about up here that you need to

8   discuss with him, feel free to take just a moment.

9      All right.  Thank you.  Thank you for your patience.  I

10  appreciate you coming up, and the floor is yours.

11         UNIDENTIFIED SPEAKER:  Yeah.  That night, I had

12  interesting opinions about the actions of that individual, and

13  in that whole circumstance, how the police allowed it to

14  escalate to things like that.  They were notified a couple

15  times.  I was told by one dispatch, "They have a right to

16  protest."

17     Brought up they had guns marching up and down the vehicles

18  that they were holding there where no one could turn around,

19  because how they had the roads blocked off.

20     And now, seeing things like that over in Iraq, that really

21  brought up some memories, and for the fact to let a kid have

22  firearms like that to discharge in a crowded area, not even hit

23  their mark a single round, not being held accountable for those

24  rounds he discharged really makes it interesting feelings to

25  come up.

1    But reading how he has ties with the Boogaloo Bois or

2    however you pronounce it, and how they are labeled a domestic

3    terrorist group by a former president, other countries have

4    labeled them terrorists, I feel when he gets charged with a --

5    if he gets charged with a felony, that that will be enough

6    where -- where he won't be able to own firearms or put anybody

7    else in harm's way.  That's all I'd like to say, Your Honor.

8         THE COURT:  You mind me asking?  You mentioned Iraq.

9    Did you serve in the armed forces in Iraq?

10         UNIDENTIFIED SPEAKER:  Yes, sir.  I did four -- four

11    years, two deployments, medically retired.  Medically -- yeah.

12    Medically retired.  Yes, sir.

13         THE COURT:  And did you -- you don't have to answer

14    any of these questions if you don't want to.  I know you're just

15    here of your own volition.  I don't mean to pry.  But on January

16    6th, did you make a report to law enforcement about what was

17    happening downtown?

18         UNIDENTIFIED SPEAKER:  Yes, Your Honor.  'Cause I sat

19    in traffic for, like, 40 minutes.  I thought it was a wreck at

20    the bridge.  I didn't realize there was some riot going on and

21    then notified the police.

22    The first two numbers I called, they were disconnected.

23    Finally got ahold of a dispatch.  She said, "They have a right

24    to protest."

25    And I'm like, "You're 100-percent right, they do, but when

1   weapons are involved, that's no longer a protest, that's a riot.

2   They're holding people against their will, so now that turns

3   into another circumstance."

4        And she was like, "Well, the police are already notified.

5   They'll do what they can do."

6        And then when I started seeing a group of gentlemen marching

7   up and down the aisles, the rows of vehicles with firearms.

8   That's -- that's when I was like, "I need to get out of here,"

9   because other circumstances that happened that's all been all

10  over the news and the media that I'm sure everyone here is aware

11  of, I didn't want me to be another statistic.

12             THE COURT:  And what time of day was that, about?

13             UNIDENTIFIED SPEAKER:  I do not recall time of day.

14  It was -- it was -- it was dark at that time, Your Honor.

15             THE COURT:  And were you there when the defendant

16  fired the weapon or allegedly fired the weapon?  Did you see --

17  see any of that part of the incident?

18             MR. JUDD:  I did not see anybody that actually

19  discharged their firearm at me, because I was driving the Tahoe,

20  and then when I seen what was going on, I tried to get out of

21  that circumstance, tried to go eastbound.  There was cars

22  sitting there that had that blocked.  So then I looped back

23  around so I could get a better assessment of everything.

24        They left a gap with their vehicles where people were

25  standing, so then I turned on my high beams, laid on my horn,

1    made my shot, 'cause in the military, you're trained fight or

2    flight, and in that circumstance, way outgunned, way outarmed,

3    so then I decided to get out of that situation.

4        And then when they started shooting at me, my training, I

5    wasn't some POG person under combat arms.  I am trained in

6    firearms.  I can assess a battlefield, a situation.  The

7    backdrop was not proper.  If that backdrop was a different

8    circumstance, we would be having a very different conversation.

9        He's lucky there was friendlies in the area.  You don't

10   discharge a firearm in a crowded area with your backdrop

11   civilians, people that weren't involved in the circumstance.

12             THE COURT:  And so was your Tahoe hit?

13             UNIDENTIFIED SPEAKER:  Negative.  He missed every

14   single shot.  Which -- yeah.  He missed, sir.  Your Honor.

15             THE COURT:  Okay.  Anything else you'd like to add?

16             UNIDENTIFIED SPEAKER:  No, Your Honor.

17             THE COURT:  Okay.  Well, I appreciate you standing up

18   today.  A lot of times, people don't.  It's very helpful for the

19   Court to hear from you, and I know it's not easy, so I

20   appreciate you standing up today.  I appreciate your time in

21   Iraq, and you can have a seat if you want to stick around or --

22   I appreciate it.

23       All right.  Mr. Renn, if you'd like to address the

24   sentencing factors set out in 3553(a) or any other arguments

25   you'd like that you feel would support justifying the sentence

1    that you contend is appropriate here, you can go ahead.

2            MR. RENN:  Your Honor, we do contend that the

3    agreement that was reached between Mr. Subleski and the

4    Government is an appropriate sentence, and, more importantly,

5    that it is a sentence that would be sufficient but not greater

6    than necessary to satisfy those sentencing policies of 3553(a).

7        Much like you, I appreciate hearing from the prosecuting

8    witness.  Too often, we don't.  We go through these books, and

9    it's code words and, you know, code conditions, and you don't

10   really see and understand, maybe, what was going on.

11       And I certainly have had a pretty lengthy opportunity to

12   meet with my client over the past several months and hear his

13   side, and even talking to him here today, and I hope he's able

14   to express that to the Court that he now, upon reflection,

15   realizes that this was a very -- a bad situation, a dangerous

16   situation, and just as the prosecuting witness just described,

17   you know, could have been a whole lot worse for a whole lot of

18   people.

19       So we do recognize that, in looking at the nature and

20   circumstances of the offense, even though we're not charged

21   with, necessarily, discharging the firearm specifically,

22   certainly recognize that that is a factor that went into the

23   charging instrument here as well as a factor that the Court is

24   going to consider.  You know, we do recognize, again, very

25   serious situation and, you know, certainly could have been

1    worse.

2        We do hope that the Court, then, can, you know, fashion what

3    we have as far as the nature and circumstances of the offense

4    and balance that and compare that with Mr. Subleski and his

5    history and his characteristics.

6        As noted in the presentence report, this is his first felony

7    conviction, and much like the prosecuting witness just said, and

8    as I set forth in my sentencing memorandum, as did the United

9    States, as a result of this plea, if the Court accepts it and

10   sentences Mr. Subleski, he will not ever be able to possess

11   firearms or ammunition or anything related to firearms or

12   ammunition, and that will be significant.

13       But this is not only his first felony conviction, but also

14   he has a criminal history category of 1.  He had one criminal

15   history point.  So very, very limited criminal history, and not

16   the kind of individual that typically comes down before the

17   Court, unless maybe it's a fraud case or something like that.

18       Also noted in there is his education.  He was a 2007

19   graduate of Jeffersonville High School, so he's got a good

20   education, has got good family support and good community

21   support.

22       I went and asked Mr. Subleski who was here, and several of

23   these folks, I'll just say Olga, Rod, and Dillon, I believe, are

24   ones that I have talked to on the telephone very early on in

25   this case and have continued to support -- support Mr. Subleski

1    as well as his family.

2         In addition to the good education, obviously, that's shown

3    also by his employment history.  Worked for a number of years at

4    Amazon, and then most recently was working at Computershare,

5    and, again, making a very nice salary, some $40,000 a year.  He

6    got to travel quite a bit with that job, spending a lot of time

7    out in Arizona.

8         The hope is is that Mr. Subleski, despite having this felony

9    conviction, assuming that he would get released, would be able

10   to go back to that company and continue working there.  Short of

11   that, if that doesn't work out, he's got other plans, including,

12   perhaps, going back with his father.  His father does own his

13   own business, a couple businesses, in fact.  Mr. Subleski may

14   very well be able to go and work with his dad.

15        And I used the term, I think, in my presentence memorandum

16   as benchmarks, and as you're going down the highway of life, you

17   know, you want to rack up a few of these things.  You want to

18   have your education.  You want to have a job.  You want to have

19   family support, community support.

20        And those were all things -- again, it doesn't mean that

21   you're not going to go out and reoffend, but it's the kind of

22   things that you can use to make sure that you don't fall back on

23   that behavior.

24        And as the Court noted here, we don't have any factors

25   under -- or excuse me.  Not factors, but guidelines per se from

1    the sentencing guidelines that this is a unique offense, but the

2    Court does then look at these 3553(a) factors and decide what

3    the sentence should be, and this was a D felony, so up to five

4    years in prison.

5        But the more important thing here is the Court is the one

6    that's going to decide on supervised release, and supervised

7    release can be up to three years.

8        And according to the conditions that have been set forth,

9    again, Mr. Subleski would not have access to firearms, if the

10   Court accepts the plea and sentences him, but, more importantly,

11   during whatever period of supervised release the Court would

12   set, there is going to be a number of conditions that are going

13   to be imposed, specifically dealing with computer use, and

14   computer, much like the firearm, was certainly a factor that led

15   to this case, so his behavior can be monitored and watched in

16   the community.

17       So when you look at, again, the nature of the offense, the

18   history and characteristics of Mr. Subleski, what, then, do you

19   need to do as far as the policies?  To promote -- to promote

20   respect for the law, provide a just punishment, deterrence, and,

21   again, I think all those things, again, it's just -- it's words,

22   it's not as descriptive as we just heard from the prosecuting

23   witness, but these are factors that the Court would consider.

24       And, again, based on my conversations with Mr. Subleski, I'm

25   confident that he does realize that he is now 33 years of age,

1    and that this is his chance, and that he certainly recognizes

2    that he's been given a lot of opportunities that other people

3    coming before the Court may not have, and he recognizes that,

4    you know, he's got to do better.

5        As far as him committing new offenses, again, I just share

6    my conversations with him, and I feel confident that if a lesson

7    needed to be learned, that has been learned.  He did meet with

8    law enforcement officers and did, you know, candidly tell them,

9    and tearfully on several occasions, that this wasn't his online

10   persona.  It wasn't the person as -- who's sitting here in the

11   court.

12       You know, too often, you know, somebody gets on social

13   media, and, you know, they're six foot five, they're handsome,

14   and, in reality, they're five foot eight and two hundred and

15   fifty pounds.  I'm not trying to make light of, you know, what

16   posts he made, Mr. Subleski, but the thought that he would be

17   able to incite a riot by what he was posting and who he is

18   personally I think is farfetched.

19           THE COURT:  Isn't -- I mean, isn't that kind of what

20   happened?

21           MR. RENN:  Well, we have pled guilty to that, Your

22   Honor, and, again, this is a very seldom-used statute, and it

23   was a very unique time in Louisville and across the country,

24   that we had Minnesota, we had Louisville, Oregon, all these

25   places that just kind of seemed to come all at once, and maybe

1    it was also with COVID.

2        So a very unique time in this community, in particular, and,

3    again, it was outside forces coming in here.  Some supporting

4    the protesters, some opposing the protesters, but I don't think

5    that somebody on a social media saying, you know, "Let's go

6    storm LMPD," there was no storming of LMPD.

7        So we have pled guilty to inciting a riot, and, again,

8    seldom-used statute, but, in reality, do I believe that any of

9    these protests or these blocking of intersections started

10    because Mr. Subleski put posts on his own social media?  I just

11    don't believe that to be true.

12        But regardless, that now, assuming the Court would sentence

13    Mr. Subleski and impose the conditions suggested by the

14    probation office, he is not going to have that opportunity to go

15    on social media and do any of those things.

16        And the other factor, I guess, that the Court would consider

17    is whether this would be an unwarranted sentence with defendants

18    similarly charged with similar records, and because we don't

19    have any guidance from the guidelines themself and other 3553(a)

20    factors or what we're going for or that the Court's looking to,

21    I don't think that this would be any kind of a situation that

22    would otherwise be unwarranted.

23        Right now, Mr. Subleski has served just less than six

24    months.  It's been at the county jail, and, obviously, a whole

25    lot of other federal inmates are out at these county jails, but

1    unlike a prison setting, you know, where you get access to

2    different programs, there really isn't access to programs at the

3    county jails, and you're basically stuck, you know, 20 men in a

4    unit, in a small confined area.

5         So the time that he has spent, basically, in the Oldham

6    County Jail I think is far more severe than if somebody was at a

7    prison, and certainly a federal prison camp as compared to, you

8    know, under lockdown.

9         And to the extent he needs any additional treatment, whether

10   it's vocational training, educational, I think he wants to do

11   those things, but can that be provided most effectively in a

12   correctional setting or on release?  And I would certainly

13   suggest it would be far more effective to do that on the

14   outside, and not the great expense that the Government would

15   have to endure just to keep him locked up for more time.

16        So for all these reasons, Your Honor, we would ask the Court

17   to impose the sentence of time served that was negotiated

18   between the parties and do believe that that is a sufficient

19   sentence but not greater than necessary to satisfy those

20   important policies.

21             THE COURT:  Okay.  Mr. Judd, you're, obviously, free

22   to say whatever you'd like, though I am curious, in light of the

23   last two speakers, the Government's reaction regarding the

24   connection, if any, between the posts and the events that took

25   place downtown.

1    And then also the victim's position regarding his sort of

2  initially disappointed response, but at least I interpret it to

3  say that he has come around from that view.

4    So in light of the two things we just heard, those are two

5  questions on the Court's mind in addition to any other arguments

6  or statements the Government would like to make.

7         MR. JUDD:  Yes, Your Honor.  I'll attempt to address

8  those in order and then -- and then address the 3553(a) factors

9  to the Court.

10    First, the connection between the posts and the activity, we

11  think they're one in the same.  We think the proof would be that

12  they are connected, that he was intending to get people out in

13  the streets, and that that act was, in fact, connected to -- to

14  the postings that occurred that day.

15    Of course, I can perfectly see how the defense would take

16  the opposite position, but those are the charges, and those are

17  the charges Mr. Subleski pled guilty to that day.  There were

18  certainly attempts to organize individuals to get together to do

19  what Mr. Subleski was doing that day.  There were posts that we

20  believe were connected to that.

21    He was basically responding to what was happening on January

22  6th that we all saw nationally, that was happening at our

23  nation's capital, and then encouraging people to get out and,

24  from Boogaloo parlance, you know, engage in, basically,

25  civil-war-type activity.

1    It so happens that they came out that night, and there were

2  people protesting in the streets, and they were armed, and they

3  shut down the streets, and Mr. Subleski was part of that.  So we

4  believe the two are connected.  Again, I understand the

5  defense's position, and that's an issue of fact that's been

6  resolved by his plea.

7    I'm sorry, Judge.  The second issue is -- oh.  We have

8  consulted with the victim in this case.  We met with him, and we

9  talked about the resolution of this case, and as the Court heard

10  here today, and as I would -- and I've argued in my sentencing

11  memo that in consistent with the 3553(a) factors is protection

12  of the public.

13    Mr. Subleski is going to carry a felony, a federal felony.

14  And this case is one where, unfortunately, you know, the only

15  people to call were the JTTF or the FBI.  You know, locals

16  weren't responding in this odd time that we were living in.  Mr.

17  Subleski will not be allowed to own a firearm.  He'll be under

18  the terms of supervision of the Court.

19    As I addressed the Court in my memo as well, this charge is

20  untested.  You know, we haven't had a lot of litigation with the

21  Riot Act.  And so from the United States' perspective, on

22  appeal, we think we may have some risk from the circuit court.

23    So Mr. Subleski has agreed to plead guilty.  He's agreed to

24  waive his right to appeal his sentence and conviction, subject

25  to certain exceptions.  So we view that as an extremely valuable

 1   consideration that we took into account as we negotiated with

 2   Mr. Renn this particular resolution.

 3       Importantly, Mr. Subleski has never really spent any time in

 4   jail, let alone what he's spent so far.  And my understanding is

 5   that it's not been a particularly pleasant experience for him,

 6   as I wouldn't expect it to be for anybody.

 7       So, you know, in listening to the victim and speaking to

 8   him, we disclosed what -- what we thought the resolution would

 9   be, and today he addressed the Court and said, basically, the

10   felony, he understood, and he could accept that.

11       The top end of this charge is only sixty months, and the low

12   end is zero.  I mean, those are basically the guidelines before

13   the Court are zero to sixty.  We looked at the calculations.

14       Basically, an offense level 12 is where we came out.  You

15   know, it's not out of thin air, particularly, but there's no

16   guidance provided by the guidelines as to where we start, and

17   where we finish, so we basically did an offense level 12 is what

18   we looked at initially.

19       So with that consideration, Mr. Subleski would be placed on

20   a term of supervised release by the Court.  We would recommend

21   three years.  As part of this offense, his use of the firearms,

22   we believe that would protect the public, provide deterrence and

23   punishment for Mr. Subleski.  It would allow the Court to

24   monitor his social media activity as well as any electronic or

25   digital statements by him, where he would attempt to incite or

1   do anything violent.

2      Importantly, Mr. Subleski has come before this Court and

3   pled guilty.  I think that deserves some consideration by the

4   Court.  And, again, you know, from the perspective of the

5   Government, you know, this was a tough time for us.  It was a

6   tough time for the community.

7      We believe, you know, he's going to take a felony, he's

8   served time, and he won't have firearms anymore.  I mean, I

9   think that's a great outcome from the perspective of the United

10  States.  Especially under such circumstances of, basically,

11  something that's never been done before.

12          THE COURT:  Thank you.  All right.  Mr. Subleski, this

13  is the part of the hearing where you have the -- when you have

14  the opportunity to address the Court directly regarding anything

15  you'd like the Court to consider in determining your sentence.

16  As I told you before, nothing requires you to speak, but you

17  certainly have that right, if you would like.

18          THE DEFENDANT:  Yes, Your Honor.  I'd like to start

19  off by saying that I wholeheartedly apologize to the victim in

20  the case.  After hearing that he was a veteran, and the respect

21  that I do have for our armed service members, that kind of hit

22  me a little hard there.  So I appreciate their service, and,

23  again, I apologize for my actions on the 6th.

24      There was a lot going on last year with the COVID lockdowns,

25  the protests, and that night, I just -- I just reacted, and

1    after spending some time in Oldham County, I do realize that I

2    made a terrible mistake, and I do regret my actions.  I've lost

3    a lot of things that I worked pretty hard for, and a lot of

4    people that have my appearance and things like that don't really

5    get those opportunities.  So it made me appreciate all of that

6    and appreciate things more going forward.

7        And I'd also like to apologize to everyone in the court

8    today.  I just hope, you know, one day for forgiveness and a

9    second chance to hopefully make some drastic changes going

10   forward.  And that will be all, Your Honor.

11             THE COURT:  Okay.  Thank you very much.  I appreciate

12   everyone's comments today.

13       Mr. Renn went through the 3553(a) factors that the law

14   requires courts to consider in imposing a sentence that's

15   sufficient but not greater than necessary to comply with the

16   purposes set forth in the sentencing laws created by Congress.

17       I'll just talk about how the Court's approaching those here.

18   In terms of the history and characteristics of the defendant,

19   the presentence report certainly discusses some aspects of your

20   family history and personal history, Mr. Subleski.  Some -- some

21   good and some bad, I think it's fair to say, as I read the

22   report, but you certainly don't have a lengthy history of

23   trouble with the law.  You certainly have faced some personal

24   challenges.  This would be different if your -- you know, this

25   were your third or fourth time sitting here in the federal

 1    court.

 2        As for the nature and circumstances of the offense and its

 3    seriousness, I don't think there's any way to sort of overstate

 4    the significance of what happened that day in downtown

 5    Louisville, that ye -- the last year in downtown Louisville,

 6    that day in America, and I certainly agree with the witness'

 7    statement that we are just all very, very fortunate that we're

 8    not here talking about other victims.

 9        This is -- this is a tragedy.  It could have been a much

10    greater tragedy for many more people, and I think you all

11    understand, now that this is our third time sitting in this

12    courtroom talking about the plea, that I cannot assign it a high

13    enough seriousness level.

14        Which is one reason we've taken a good length of time to

15    talk about whether this -- whether -- to ensure the sent --

16    sentence is appropriate given the seriousness of the offense and

17    the danger that was involved.

18        In terms of the need for the sentence imposed to reflect the

19    seriousness of the offense, promote respect for the law and

20    provide judge -- just punishment, for all the reasons we just

21    said, certainly, it would not be appropriate for an action like

22    this to be met with anything that might be described as a slap

23    on the wrist.

24        This was -- this was an offense about not respecting the

25    law.  We need the sentence to promote respect for the law and to

1  signal to others that we do value the rule of law and are

2  willing to take steps to enforce it when folks go too far.

3      And so for the reasons the prosecutor said, I view this

4  proposed sentence as a -- as not a slap on the wrist, and one

5  that carries significant consequences for you, Mr. Subleski, but

6  at the same time, one that could have been much worse and that

7  represents an opportunity for you to move beyond where we are

8  today and, like you said, take steps to make sure we're never in

9  this situation again, because it is a very good opportunity that

10  the Government and your lawyer are putting on the table today,

11  from your perspective.

12      In terms of deterrence and protection for the public, Mr.

13  Judd also touched on that.  Promoting respect for the law means

14  dealing with a consequence that has -- has some bite.  The

15  protection of the public from other days like that, other

16  offenses like this is exactly why we're talking about loss of

17  firearm rights, monitoring social media conduct.

18      Those conditions are appropriate given the kinds of

19  sentences available, the conditions that can be imposed, the

20  opportunities you might have had in correction versus one you

21  may have on release, and I agree with the lawyers' statements

22  regarding sentencing disparities and restitution not having so

23  so much of an impact here.

24      So that is the way that I'm approaching this.  I hope

25  everyone can tell that this is a case that has caused me to, you

1    know, grapple with the good and the bad and the otherwise more

2    seriously or it's been more difficult to grapple with, the

3    issues at stake here, than in most cases that are more cut and

4    dried, but that is -- that is basically the way I'm approaching

5    an offense that is extremely serious but also a consequence that

6    I view as serious in providing deterrence and opportunity and

7    promoting the rule of law as well.

8        Is there anything else from either side before the Court

9    announces the sentence?

10           MR. JUDD:  Not from the United States.  Thank you.

11           MR. RENN:  No, Your Honor.  Thank you.

12           THE COURT:  Okay.  Well, having carefully considered

13   the guidelines recommendations, to the extent they apply at all,

14   the sentencing factors we just discussed, arguments of counsel,

15   statement of the defendant, statement of the victim, the

16   agreement of the parties regarding an appropriate punishment,

17   the Court will accept the C Plea agreement and accept the

18   conditional guilty plea, sentence Mr. Subleski to time served

19   regarding Count 1 in the indictment.

20       After release, Mr. Subleski will be placed on supervised

21   release for a term of three years.  He'll have to abide by the

22   standard conditions of supervision adopted by the Court as well

23   as the special conditions provided to the defendant and counsel

24   recommended in the PSR in paragraph 60, I believe.  We've

25   already discussed those.  Mr. Renn has already discussed those,

1    the defendant's awareness and acceptance of those.

2        That those conditions include submitting to testing to

3    determine the use of a prohibited substance.  They include

4    participation in a community-based mental health treatment

5    program approved by the US Probation Office.  The conditions

6    including a search condition related to property, residence,

7    vehicle, and this is all meant to back up a primary condition,

8    electronic communications or data storage.

9        The probation officer will have the right to -- to search,

10   and there are certain conditions on those searches set out in

11   the -- will be set out in the judgment.

12       Mr. Subleski must submit to the US Probation Office officer

13   conducting an initial computer inspection or search of any of

14   the defendant's computer systems.  Those will be subject to

15   examination and monitoring.

16       Mr. Subleski must consent to having installed on his

17   computers hardware or software that will monitor the defendant's

18   computer use or prevent access to particular materials.

19       The defendant shall participate in and abide by the rules of

20   the computer restriction and monitoring program, shall cease the

21   use or activity on any computer subject to examination and

22   monitoring until the computer can be processed by the probation

23   office.

24       Mr. Subleski is prohibited from using any computer other

25   than one monitored by the US Probation Office, unless required

1    by employment, which is something you would need to discuss with

2    your probation officer, and Mr. Subleski must provide the

3    probation officer with accurate information about your entire

4    computer system, passwords, Internet service providers.

5        In light of these conditions, the Court finds the sentence

6    is sufficient but not greater than necessary to serve the

7    purposes of Congress' sentencing laws that we discussed above.

8        Mr. Judd, are there any arguments the Government has made

9    that you believe we need to address in rendering the sentence?

10           MR. JUDD:  No, sir.

11           THE COURT:  Mr. Renn?

12           MR. RENN:  No, Your Honor.

13           THE COURT:  Anything else concerning the defendant's

14   sentence, including the conditions for probation?

15           MR. RENN:  I guess we do have to give him his appel --

16   appellate rights.

17           THE COURT:  Yep.  Next on the agenda.

18           MR. RENN:  Okay.

19           THE COURT:  All right.  Now that we've addressed all

20   the remaining issues with the sentence, the Court orders it

21   imposed as stated and will enter an appropriate judgment.

22       As Mr. Renn mentioned, as part of your plea agreement, if I

23   call correct -- recall correctly, Mr. Subleski, you agreed to

24   surrender your right to appeal your conviction or sentence

25   except in the circumstance of prosecutorial misconduct or

1    ineffective assistance of your counsel.

2        I have an acknowledgment of your waiver of appeal rights

3    today.  This should simply reiterate what you agreed to back in

4    April.  If I could ask the officer to hand this to read and

5    sign.  Discuss it with your lawyer, if you need to.

6        Okay.  Thank you.  These waivers are typically upheld in the

7    courts, but if you appeal under those two exceptions I mentioned

8    or for any other reason, you must do so by filing a notice of

9    appeal within 14 days of the Court's entry of judgment, which

10   will occur in the next few days.

11       If you are unable to pay the costs of an appeal, you could

12   apply for leave to appeal without paying those costs based on

13   the inability to pay.  Mr. Subleski, do you understand your

14   appeal rights?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  Okay.  All right.  Mr. Subleski is in

17   custody today.  He will be released based on the sentence

18   imposed of time served, but I believe the Marshals will need to

19   take you for processing and release, but after that, pursuant to

20   the agreement with the Government, the defendant will be

21   released.

22       Is there anything else we need to address from your

23   perspective, Mr. Renn?

24              MR. RENN:  No, Your Honor.  Thank you.

25              THE COURT:  Mr. Judd?

1          MR. JUDD:  No, sir.  Thank you.

2          THE COURT:  Let me thank everyone who has joined us

3     here today for your time.  I know this is not necessarily an

4     easy day for a lot of people.  For those who are here in support

5     of Mr. Subleski, I hope you too understand the seriousness of

6     this proceeding and the utmost importance of never ending up in

7     this type of situation again.  I would ask that you support him

8     to the utmost possible.

9          Mr. Subleski, as I mentioned, I do view this as a major

10    opportunity for you.  I hope you can take advantage of it as

11    much as possible.  Please try to view your interactions with the

12    probation office not as a hindrance but as folks who want to

13    help you succeed from this point forward.  No matter what

14    happened before today, it's in everyone's interest here that you

15    succeed from this day forward, and that includes probation, so

16    please take that seriously.

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Like I said, thanks to everyone who came

19    today, thanks for everyone who spoke up, and I just wish you all

20    the best of luck.  And with that, we'll take a recess.

21         (Proceedings concluded at 1:58 p.m.)

22

23

24

25

1

2

C E R T I F I C A T E

3      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

4 THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

5

6
         s/Rebecca S. Boyd                    August 5, 2021
7 Official Court Reporter                    Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25